UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CASE NO 22-5407

*FILIED ELECTRONICALLY*

**JULIE HELPHENSTINE, Administratrix of the Estate of Christopher Dale Helphenstine
And Guardian of B.D.H., the minor son of Christopher Dale Helphenstine**

**PLAINTIFF-APPELLANT**

**V.**

**LEWIS COUNTY, KY; JEFF LYKINS, Individually; ANTHONY RUARK,
Individually; ANDY LUCAS, Individually; BEN CARVER, Individually;
AMANDA MCGINNIS Individually; SANDY BLOOMFIELD, Individually;
MARK RILEY, Individually; MELINDA MONROE, Individually;
JEFFERY THOROUGHMAN, Individually; TOMMY VON LUHURTE, D.O.,
Individually; JOHNNY BIVENS, Individually; JOHN BYARD, Individually**

**DEFFENDATS-APPELLEES**

On Appeal from the United States District Court
Eastern District of Kentucky, Northern Division at Ashland
Case No. 0:18-cv-00093
Hon. Henry R. Wilhoit, Jr., District Judge

# APPELLEE'S BRIEF

Clayton L. Robinson, Esq.
Courtney L. Soltis, Esq.
ROBINSON & HAVENS, PSC
101 Prosperous Place, Suite 100
Lexington, KY 40509
Ph: (859) 559-4533
crobinson@robinsonhavens.com
csoltis@robinsonhavens.com

**Counsel for Defendant- Appellee Tommy von Luhrte, D.O.**

## Defendant- Appellee Tommy von Luhrte, D.O.'s Disclosure of Corporate Affiliations and Financial Interest

Pursuant to 6th Cir. R, 26.1, Defendant-Appellee Tommy von Luhrte makes the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?

   Answer: No.

2. Is there a publicly owned corporation, not a party to the appeal, that has financial interest in the outcome?

   Answer: No.

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ..................................................................................4

STATEMENT REGARDING ORAL ARGUMENT ..............................................5

STATEMENT OF THE CASE ..............................................................................6

STATEMENT OF THE FACTS ............................................................................6

SUMMARY OF THE ARGUMENT .....................................................................11

ARGUMENT .......................................................................................................11

    (a) LEGAL STANDARD ................................................................................12

    (b) APPELLANT HAS FAILED TO ESTABLISH THAT DR. VON LUHRTE ACTED WITH
        DELIBERATE INDIFFERENCE, AS REQUIRED UNDER THE *BRAWNER* LINE OF CASES ................14

    (c) PHYSICIANS ARE CONSTITUTIONALLY BARRED FROM TREATING COMPETENT,
        NONCONSENTING PATIENTS ......................................................................16

CONCLUSION ....................................................................................................19

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(A) .........................20

CERTIFICATE OF SERVICE ............................................................................20

APPENDIX....................................................................................................20-21

# **TABLE OF AUTHORITIES**

## **Constitutional Amendments**

**Page No.**

U.S. Const. amend. VIII.....................................................................................12, 13, 16, 19

U.S. Const. amend. XIV, §1 ..............................................................................11, 12, 16, 19

## **Federal Statutes**

42 U.S.C. § 1983...............................................................................................5, 11, 12, 19

## **Federal Cases**

*Bowles v. Advanced Corr. Healthcare*, 2020 U.S. Dist. LEXIS 224420
(E.D. Ky. Nov. 30, 2020).................................................................................... 5, 13-14

*Branch v. Logan*, 2015 U.S. Dist. LEXIS 25870 (M.D. Tenn. 2015) ...........................16

*Brawner v. Scott Cnty.*, 14 F.4th 585 (6th Cir. 2021) ...................................5, 12, 14, 17

*City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983) ...........................................16

*Comstock v. McCrary*, 273 F.3d 693 (6th Cir. 2001) ............................................ 13-14

*Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990) ..........................................16

*Durham v. Nu'Man*, 97 F.3d 862 (6th Cir. 1996) .........................................................16

*Estelle v. Gamble*, 429 U.S. 97 (1976) ..................................................................11, 13

*Farmer v. Brennan*, 511 U.S. 825 (1994) ..............................................................12, 13

*Greene v. Crawford Cnty.*, 22 F.4th 593 (6th Cir. 2022)........................... 14, 17-18, 19

*Snow v. Ky. State Reformatory*, 2019 U.S. Dist. LEXIS 208058 (W.D. Ky. 2019) .....................16

*Speers v. Cnty. of Berrien*, 196 F. App'x 390 (6th Cir. 2006) ......................................14

*Trozzi v. Lake Cnty., Ohio*, 29 F.4th 745 (6th Cir. 2022) ................................ 12-13, 14

*Washington v. Harper*, 494 U.S. 210 (1990) ...............................................................16

*Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).........................................................16

*Wilson v. Seiter*, 501 U.S. 294 (1991)..................................................................... 11-12

## **STATEMENT REGARDING ORAL ARGUMENT**

Summary judgment was properly granted by the District Court as to Appellant's §1983 claims against Dr. von Luhrte based upon *Brawner* and *Bowles*. As such, oral argument is not necessary.

## **STATEMENT OF THE CASE**

The claims against Dr. von Luhrte arise from Appellants' allegations of medical malpractice. Appellants claim Defendant/Appellee, Tommy von Luhrte, D.O., violated the standard of care in his treatment of decedent Christopher Helphenstine, and that this alleged violation led to Mr. Helphenstine's death. According to the Kentucky Certificate of Death and medical examiner Dr. Meredith Frame, Mr. Helphenstine's cause of death was due to "acute (Fentanyl) and chronic drug abuse" with the approximate interval between onset and death identified as minutes. Death Certificate, RE 96-21, Page ID # 840; *see also* Frame Dep., RE 119, Page ID # 1422-1507, at 1431-32. Appellants contend that Dr. von Luhrte's "deliberate indifference and grossly negligent – if not reckless, intentional and/or malicious – conduct" subjected Mr. Helphenstine to "cruel and unusual punishment, deprived of his life, and denied due process of law." Pl.'s Compl., RE 1, Page ID # 7, ¶ 25. Appellant has failed to state how the alleged conduct of Dr. von Luhrte rose to the level of deliberate indifference and/or recklessness giving rise to a constitutional violation or statutory violation per 42 U.S.C. §1983 and recent case law.

## **STATEMENT OF THE FACTS**

Mr. Helphenstine was incarcerated at the Lewis County Detention Center (LCDC) on April 14, 2017, after his arrest for possession of a controlled substance in the third degree and trafficking of a controlled substance in the first degree. While incarcerated, Mr. Helphenstine became ill, reporting that he was "dope sick." Riley Dep., RE 107, Page ID # 1121-36, at 10:09. LCDC Deputy Mark Riley asked Mr. Helphenstine if he wanted to see the doctor or go to the hospital, but Mr. Helphenstine said no. Riley Dep., RE 107, Page ID # 1121-36, at 10:09. He was moved to a medical cell at approximately 8:30 PM on April 16, 2017. Riley Incident Report, RE 124-5, Page ID # 1744. Mr. Helphenstine was observed approximately every twenty minutes by the staff at

6

LCDC while in the medical watch cell. At various times, Mr. Helphenstine was noted to be laying down, sitting up, eating, talking, moving, or, occasionally, vomiting. Observation Logs, RE 124-15, Page ID # 1759-61.

According to the LCDC Facility Observation Logs, a facsimile was sent to Dr. von Luhrte's office on April 18, 2017 at 4:03 AM. Facility Master Log Report, RE 94-4, Page ID # 750. Dr. von Luhrte had not been made aware of Mr. Helphenstine's incarceration or medical status prior to April 18. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 82:18-83:01. The medical request form was sent by Deputy Sandra Bloomfield and completed by Deputy Amanda McGinnis. McGinnis Med. Req. Form, RE 124-6, Page ID # 1745. This form indicated that Mr. Helphenstine was "soiling himself and vomiting…refusing to eat or drink due to upset stomach." McGinnis Med. Req. Form, RE 124-6, Page ID # 1745. Upon receiving this medical request form, Dr. von Luhrte spoke with a jailer at LCDC and then prescribed anti-nausea medication, Reglan. Von Luhrte Orders, RE 124-12, Page ID # 1756; Von Luhrte Dep., RE 102, Page ID # 956-1013, at 88:16-24. This medication was administered by employees of LCDC. Medication Admin. R., RE 124-13, Page ID # 1757. This is the only documented communication between any LCDC employee and Dr. von Luhrte regarding Mr. Helphenstine's condition. Defendant Lewis County has produced a document which appears to be a second medical request form sent by deputy jailer Melinda Monroe, indicating Mr. Helphenstine needed to be seen by Dr. von Luhrte. Monroe Med. Req. Form, RE 124-11, Page ID # 1755. There is no evidence this form was received by Dr. von Luhrte, or indeed sent at all.

Dr. von Luhrte has testified he called LCDC on April 18, 2017, upon receiving the first medical request form completed by Ms. McGinnis. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 84:17. Dr. von Luhrte testified that during this conversation he advised the LCDC jailer

to take Mr. Helphenstine to the Emergency Room to receive IV fluids, a form of treatment Dr. von Luhrte could not administer on-site at LCDC. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 88:03-18. Dr. von Luhrte was informed that Mr. Helphenstine had refused transport to the Emergency Room. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 85:21-24.

After Dr. von Luhrte was advised that Mr. Helphenstine had refused transport to the Emergency Room, he wrote a prescription for Reglan, an anti-nausea medication to treat Mr. Helphenstine's vomiting and ordered a limited diet of saltine crackers, bread, toast and chicken noodle soup to allow Mr. Helphenstine to rest his bowels and encouraged sips of Kool-Aid and popsicles to treat or prevent Mr. Helphenstine's possible dehydration. Von Luhrte Orders, RE 124-12, Page ID # 1756; Von Luhrte Dep., RE 102, Page ID # 956-1013, at 88:16- 89:24.

After prescribing Reglan, Dr. von Luhrte testified he was contacted by a LCDC jailer regarding Mr. Helphenstine's condition, Dr. von Luhrte could not recall who he spoke with. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 116, 127. Dr. von Luhrte again recommended that Mr. Helphenstine be transported to the Emergency Room for further care; he was again advised that Mr. Helphenstine refused transport. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 116:14-24. After this phone call on the afternoon of April 18, Dr. von Luhrte prescribed Zofran, a stronger anti-nausea medication to treat Mr. Helphenstine. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 116-17. This was the last interaction Dr. von Luhrte had with any employee of LCDC regarding Mr. Helphenstine.

Defendant LCDC produced a document during discovery which appears to be a second medical request form completed by LCDC deputy jailer Melinda Monroe. Monroe Med Req. Form, RE 124-11, Page ID # 1755. Although this form indicated Mr. Helphenstine "needs to be seen by Dr. Tommy," there is no evidence this form was in fact sent to Dr. von Luhrte (as it is not

noted in the Facility Master Log Report) and Dr. von Luhrte has testified that he did not receive this second medical request form. Facility Master Log Report, RE 94-4, Page ID # 750; Von Luhrte Dep., RE 102, Page ID # 956-1013, at 109:11.

There has been no testimony from any of the nine LCDC employees or Dr. von Luhrte that any employee of LCDC ever contacted Dr. von Luhrte to request that he examine Mr. Helphenstine.[1] However, multiple employees of LCDC have testified that Mr. Helphenstine's condition appeared to improve on the evening of April 18, 2017. Specifically, Deputy Amanda McGinnis testified that she was informed that Mr. Helphenstine was "doing much better now that he's not vomiting all the time." McGinnis Dep., RE 98, Page ID # 846-78, at 62:02-06. She agreed the cessation of vomiting was a result of the anti-nausea medication prescribed by Dr. von Luhrte. McGinnis Dep., RE 98, Page ID # 846-78, at 62:02-06. Further, Ms. McGinnis' "impression was that he was getting better" when she arrived at the jail at 11:00 p.m. on April 18. McGinnis Dep., RE 98, Page ID # 846-78, 70:23-71:01. Likewise, LCDC deputy jailer, Sandra Bloomfield, testified that Mr. Helphenstine walked around, drank a soda, and walked independently to and from the shower. Bloomfield Dep., RE 108, Page ID # 1137-87, at 55:19-22. Additionally, LCDC jailer, Andy Lucas, spoke with Mr. Helphenstine at approximately 11:00 p.m. on April 18, 2017. Lucas Dep., RE 99, Page ID # 879-98, at 10:16-11:11. Mr. Lucas testified that "Mr. Helphenstine was standing up talking." Lucas Dep., RE 99, Page ID # 879-98, at 7:24-8:14. Upon further inquiry, "he said he was feeling a whole lot better." Lucas Dep., RE 99, Page ID # 879-98, at 7:24-

---

[1] *See* McGinnis Dep., RE 98, Page ID # 846-78; Lucas Dep., RE 99, Page ID # 879-98; Ruark Dep., RE 100, Page ID # 899-929; Carver Dep., RE 101, Page ID # 930-55; Lykins Dep., RE 103, Page ID # 1014-59; Thoroughman Dep., RE 104, Page ID # 1060-86; Riley Dep., RE 107, Page ID # 1121-36; Bloomfield Dep., RE 108, Page ID # 1137-87; Potter Dep. RE 121, Page ID # 1584-1697.

8:02. Mr. Lucas gave Mr. Helphenstine a soda and Mr. Helphenstine reassured, "I'm feeling pretty good now." Lucas Dep., RE 99, Page ID # 879-98, at 8:07-14.

Moreover, video footage produced by LCDC depicts Mr. Helphenstine standing, eating, and drinking at 10:30 p.m. on April 18, 2017. Throughout the early morning hours of April 19, 2017, LCDC deputies continued to observe Mr. Helphenstine and document their observation on the medical watch sheets[2] at frequent intervals. Observation Logs, RE 124-15, Page ID # 1761, Apr. 19, 2017, at 12:03 a.m.-3:30 a.m.[3] The medical watch sheets completed by LCDC Deputies indicated that Mr. Helphenstine was drinking Ensure around 3:13 a.m. on April 19, 2017. Observation Logs, RE 124-15, Page ID # 1761.

Around 3:25 a.m. on the morning of April 19, 2017, Mr. Helphenstine was found to be unresponsive. Pl.'s Compl., RE 1, Page ID # 6, at ¶ 15. Mr. Helphenstine died enroute to the hospital. Pl.'s Compl., RE 1, Page ID # 6, at ¶ 15; Death Certificate, RE 96-21, Page ID # 840. His cause of death was identified as "acute (fentanyl) and chronic drug abuse." Death Certificate, RE 96-21, Page ID # 840; *see also* Frame Dep., RE 119, Page ID # 1422-1507, at 1431-32.

Much of Appellants' brief as it pertains to Dr. von Luhrte is focused on an inappropriate and irrelevant attack on Dr. von Luhrte's general ability as a physician. Neither Dr. von Luhrte's age, nor his practice history in Ohio, nor the payment he received for his services to LCDC are relevant to the facts at issue or the care provided to Mr. Helphenstine. After, Dr. von Luhrte was

---

[2] For clarity of the record, because Appellant has referred to these as "Observation Logs," references have been so demarcated. However, the form itself is titled "Suicide/Medical Watch Sheet," and has been so referenced in discussion in this brief. Observation logs and medical watch sheets are the same document.

[3] It appears the individuals logging information for April 19, 2017 did not denote the change in date from April 18, 2017, but the times referenced indicate the date change, as used in this brief.

notified that Mr. Helphenstine was vomiting, soiling himself and refusing to eat or drink. Dr. von Luhrte recommended that Mr. Helphenstine be taken to the hospital. Dr. von Luhrte was informed that Mr. Helphenstine refused to go to the hospital, he prescribed anti-nausea medications and recommended that Mr. Helphenstine be given a bland diet and encouraged to sip Kool-Aid and popsicles to treat possible dehydration. Von Luhrte Orders, RE 124-12, Page ID # 1756; Von Luhrte Dep., RE 102, Page ID # 956-1013, at 88:16- 89:24. Dr. von Luhrte was not informed of a decline in Mr. Helphenstine's condition.

## SUMMARY OF THE ARGUMENT

Appellant cannot establish that Dr. von Luhrte acted with deliberate indifference in his care and treatment of Mr. Helphenstine. The Supreme Court noted in *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) that alleged "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 106. Dr. von Luhrte appropriately prescribed medication to treat Mr. Helphenstine's complaints of nausea and vomiting and suggested transport to a hospital for further treatment. He was never asked to examine Mr. Helphenstine and was not contacted after the afternoon of April 18, 2017 regarding Mr. Helphenstine's condition. There has been no evidence produced to satisfy the requirements of a §1983 claim.

## ARGUMENT

There is no evidence that Dr. von Luhrte acted with deliberate indifference, depriving Mr. Helphenstine of his Fourteenth Amendment constitutional or statutory rights. For a claim of inadequate medical care to be recognized under §1983, a "prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to medical needs." *Wilson v. Seiter,* 501

U.S. 294, 297, 115 L. Ed. 2d 271, 111 St. Ct. 2321 (1991). The *Wilson* Court further indicated that mere assertions of "failure to provide medical care […] are insufficient to state a claim." *Id.*

(a) **Legal Standard**

To prevail on a §1983 action, a Plaintiff must prove deliberate indifference, based upon objective and subjective components. To meet the objective component, the plaintiff must show that the medical need is sufficiently serious. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). To meet the subjective component, a plaintiff must show that "an official knew of and disregarded and excessive risk to inmate health or safety." *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 837).

The subjective component, as applied to Fourteenth Amendment claims, was most recently addressed in the *Brawner* line of cases. This Court held in *Brawner* that, as with Eighth Amendment claims, negligence is not enough, and instead a recklessness standard applies. *Brawner*, 14 F.4th at 597. *Brawner* requires that a plaintiff must present evidence from which a reasonable jury could find that the defendant's "action (or lack of action) was intentional (not accidental) and she either (a) acted intentionally to ignore [the detainee's] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [the detainee], even though a reasonable official in [the defendant's] position would have known that the serious medical need posed an excessive risk to [the detainee's] health or safety." *Id*.

In clarifying the requirements for a Fourteenth Amendment inadequate medical care claim under *Farmer*, this Court recently held that " plaintiff must satisfy three elements: (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's

medical needs subjected the detainee to an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk." *Trozzi v. Lake Cnty., Ohio*, 29 F.4th 745, 757-58 (6th Cir. 2022). Under this framework, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot […] be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. This three-part test recognized that "the liability for a constitutional tort, even one that includes an objective inquiry, must still be 'purposeful and knowing' [for which] criminal 'recklessness' might suffice, ensuring that there is a sufficiently culpable mental state to satisfy the 'high bar' for constitutional torts grounded in a substantive due process violation." *Trozzi*, 29 F.4th at 758 (internal citations omitted).

Focusing on constitutional violation claims directed at medical professionals, the Supreme Court reasoned in *Estelle* that alleged "medical malpractice does not become a constitutional violation merely because the victim is a prisoner. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." 429 U.S. at 106. Likewise, "'a plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment. When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.'"[4] *Bowles v. Advanced Corr. Healthcare*, 2020 U.S. Dist.

---

[4] Dr. von Luhrte maintains that his care and treatment of Mr. Helphenstine complied with the standard of care and does not give rise to state law claims of negligence.

LEXIS 224420, at *19 (E.D. Ky. Nov. 30, 2020) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

    (b) **Appellant has failed to establish that Dr. von Luhrte acted with deliberate indifference, as required under the *Brawner* line of cases.**

Even when the facts are taken in a light most favorable to the Appellants, Dr. von Luhrte did not act with deliberate indifference. The elements of the subjective component of deliberate indifference, as set forth in *Brawner* and *Trozzi*, require Appellant to prove that a reasonable officer at the scene would have understood that Mr. Helphenstine's medical needs subjected him to an excessive risk of harm, *and* have knowledge that a failure to respond would pose a serious risk to Mr. Helphenstine, *and* the official, Dr. von Luhrte, ignored that risk. *Trozzi*, 29 F.4th at 757. Dr. von Luhrte was not at the scene and had no knowledge that his actions posed a risk to Mr. Helphenstine.

For purposes of the second prong of the three-part test,[5] the Court cannot impute knowledge from one defendant to another. *Speers v. Cnty. of Berrien*, 196 F. App'x 390, 394 (6th Cir. 2006); *accord. Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022). The medical request form sent to Dr. von Luhrte stated that Mr. Helphenstine was "soiling himself and vomiting…refusing to eat and drink due to upset stomach." McGinnis Med Req. Form, RE 124-6, Page ID # 1745. Dr. von Luhrte promptly contacted the jail via telephone, and advised that Mr. Helphenstine should be transported to the emergency room to receive IV fluids, a form of treatment Dr. von Luhrte could not provide on-site at LCDC. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 85:21-24, 88:16-18. Mr. Helphenstine refused transport. Von Luhrte Dep., RE 102, Page

---

[5] The second prong is "a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm." *Trozzi*, 29 F.4th at 757-58.

ID # 956-1013, at 85:21-24. Dr. von Luhrte in turn prescribed an anti-nausea medication, Reglan. Von Luhrte Orders, RE 124-12, Page ID # 1756; Von Luhrte Dep., RE 102, Page ID # 956-1013, at 88:16-24.

Dr. von Luhrte was contacted on one subsequent occasion by a LCDC jailer regarding Mr. Helphenstine's condition. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 116:14-24. Dr. von Luhrte again recommended Mr. Helphenstine be transported to the emergency room. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 116:14-24. Again, Mr. Helphenstine refused. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 116:14-24. Dr. von Luhrte then prescribed Zofran, a stronger anti-nausea medication. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 116-17. While there is no physical record of that phone call, the prescription of the medication, Zofran, and its administration is evidence that the call occurred and action was taken. Medication Admin. R., RE 124-13, Page ID # 1757.

There was no further communication to Dr. von Luhrte regarding Mr. Helphenstine. Dr. von Luhrte was never advised that Mr. Helphenstine's condition had worsened or that he was experiencing any life-threatening symptoms. In fact, the evidence indicates Mr. Helphenstine's condition improved following the administration of the anti-nausea medications prescribed by Dr. von Luhrte. Mr. Helphenstine was walking around at 11:19 p.m.; drinking at 11:30 p.m.; drinking an Ensure at 3:13 a.m. Observation Logs, RE 124-15, Page ID # 1759-61. Jailer Amanda McGinnis testified he was doing better and had stopped vomiting following administration of the anti-nausea medication prescribed by Dr. von Luhrte. McGinnis Dep., RE 98, Page ID # 846-78, at 62:2-6, 71:1. Deputy jailer Sandra Bloomfield testified he was doing better, as well. Bloomfield Dep., RE 108, Page ID # 1137-87, at 55:19-22. Finally, jailer Andy Lucas testified he spoke to Mr. Helphenstine at approximately 11:00 p.m. on April 18, 2017, and he was standing up, talking, and

even said, "I'm feeling pretty good now." Lucas Dep., RE 99, Page ID # 879-98, at 7:24-8:14; 8:7-14. Dr. von Luhrte was never advised that Mr. Helphenstine's condition had worsened after taking the prescribed medication, and Dr. von Luhrte was never contacted by anyone at LCDC, either requesting further instruction in providing care to Mr. Helphenstine or requesting he examine Mr. Helphenstine after the administration of the second anti-nausea medication.

(c) **Physicians are constitutionally barred from treating competent, nonconsenting patients.**

Appellant argues that Dr. von Luhrte acted with deliberate indifference in failing to ensure Mr. Helphenstine was taken to the Emergency Room after he suggested Mr. Helphenstine be transported to receive IV fluids. Appellant Br. at 48-50, § E. Dr. von Luhrte cannot force a lucid, conscious patient to receive medical treatment.[6] Instead, Dr. von Luhrte offered another form of treatment: medication to treat Mr. Helphenstine's complaints. Von Luhrte Orders, RE 124-12,

---

[6] "The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property, without due process of law. The principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278, 110 S. Ct. 2841, 111 L. Ed. 2d 224 (1990) (recognizing prisoners' significant liberty interest in avoiding unwanted medical treatment under the Fourteenth Amendment Due Process Clause) (internal citations omitted). With regard to inmates' right to medical decision-making, the Supreme Court held "[t]he forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Washington v. Harper*, 494 U.S. 210, 229, 108 L. Ed. 2d 178, 110 S. Ct. 1028 (1990). "A pretrial detainee has a Fourteenth Amendment right to adequate medical care and to refuse necessary medical care. For denial of medical care or services, the Sixth Circuit applies the deliberate indifference standard under the Eighth Amendment." *Branch v. Logan*, 2015 U.S. Dist. LEXIS 25870, at *17 (M.D. Tenn. 2015) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244-46, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983); *Cruzan*, 497 U.S. at 278)). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference." *Snow v. Ky. State Reformatory*, 2019 U.S. Dist. LEXIS 208058, at *6-7 (W.D. Ky. 2019) (citing *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir. 1996)).

Page ID # 1756; Von Luhrte Dep., RE 102, Page ID # 956-1013, at 88:16-24. According to Dr. von Luhrte, after this medication was prescribed, he was again contacted regarding Mr. Helphenstine and was again advised Mr. Helphenstine was refusing transport to the hospital, and prescribed a stronger anti-nausea medication, Zofran. Von Luhrte Dep., RE 102, Page ID # 956-1013, at 116:14-24.

None of the deposed employees at LCDC recalled speaking with Dr. von Luhrte on April 18, 2017, regarding Mr. Helphenstine. However, the additional prescription of a second, stronger anti-nausea medication by Dr. von Luhrte is evidence that a second communication between LCDC personnel and Dr. von Luhrte occurred. Medication Admin. R., RE 124-13, Page ID # 1757.

Appellants' reliance on *Greene v. Crawford County* is misplaced.[7] *Greene* affirmed the higher standard of the modified second prong of the deliberate indifference test established under *Brawner*. *Greene*, 22 F.4th at 606-07. Additionally, there are significant factual distinctions between Mr. Greene's and Mr. Helphenstine's medical treatment and conditions while detained. After appearing in court intoxicated, Mr. Greene's bond was revoked. *Greene*, 22 F.4th at 601. Mr. Greene's attorney advised that his client had a history of seizures subsequent to alcohol withdrawal. *Id.* While detained Greene's condition deteriorated, he displayed erratic behavior, confusion and irritability, hallucinations and other symptoms of delirium tremens. *Id.* at 598-99; 602-04. The jail officials were aware of these behaviors from December 5 until Mr. Greene was found unresponsive on December 8. *Id.* at 603-04. Mr. Greene received no medical care while

---

[7] "*Brawner* modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness: A pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard. In other words, a plaintiff must prove that the defendant acted deliberately (not accidentally), and also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." 22 F.4th at 606-07 (internal citations omitted); *compare* Appellant Br. at 31, 32, 50.

incarcerated. *Id.* at 603. This Court determined that there was sufficient evidence to create a genuine issue of fact regarding whether certain jail officials were deliberately indifferent. *Id.* at 609-14.

The present case is clearly distinguishable from *Greene*. Mr. Helphenstine did receive medical care. Dr. von Luhrte ordered Reglan and Zofran for nausea, recommended a bland diet, and recommended that he sip Kool Aid and popsicles for potential dehydration. Von Luhrte Orders, RE 124-12, Page ID # 1756; Von Luhrte Dep., RE 102, Page ID # 956-1013, at 88:16-89:24. Dr. von Luhrte had no knowledge or awareness of a history of serious reactions to withdrawal, and various LCDC employees testified that Mr. Helphenstine's condition continued to improve until he ultimately became unresponsive. Observation Logs, RE 124-15, Page ID # 1759-61; McGinnis Dep., RE 98, Page ID # 846-78, at 62:2-6, 71:1; Bloomfield Dep., RE 108, Page ID # 1137-87, at 55:19-22; Lucas Dep., RE 99, Page ID # 879-98, at 7:24-8:14; 8:7-14. Relying on *Greene*[8] to support Appellants' argument is improper as the only factual similarity with Mr. Helphenstine's case is that both detainees required medical care while detained.

Even assuming *arguendo* that Dr. von Luhrte's recommendation that Mr. Helphenstine be transported to the hospital is somehow evidence of a recognition of an excessive risk of harm, the evidence confirms that Dr. von Luhrte did not ignore this alleged risk. Mr. Helphenstine refused to be transported to the hospital. There is no evidence that he lacked the mental capacity to make this decision and, in light of Mr. Helphenstine's decision, Dr. von Luhrte put an alternate plan in place to treat Mr. Helphenstine, which included anti-nausea medication and continued monitoring

---

[8] The Court in *Greene* determined that, based upon a fact intensive analysis, sufficient evidence may have existed to find one of the many jail employees involved acted with deliberate indifference. *See Greene*, 22 F.4th at 615.

by jail staff. Dr. von Luhrte appropriately prescribed medication to treat Mr. Helphenstine's complaints of nausea and vomiting, and suggested he be transported to a hospital for further treatment. No witness has testified that Dr. von Luhrte was asked to come see Mr. Helphenstine. *See supra* note 1, at 9. Dr. von Luhrte was not contacted after the phone call resulting in the Zofran prescription, regarding Mr. Helphenstine's condition. As a result of that plan, Mr. Helphenstine appeared to be improving, until he became unresponsive in the early morning hours of April 19, 2017. There is no evidence that Dr. von Luhrte acted recklessly or ignored the potential risk of Mr. Helphenstine's condition.

Appellant further fails to put forth evidence sufficient to establish the subjective element of deliberate indifference. *See Greene*, 22 F.4th at 606. Based upon the information provided to Dr. von Luhrte, there is no proof Mr. Helphenstine was subjected to an excessive risk of harm. There is no evidence that Dr. von Luhrte failed to respond. Moreover, there is no evidence suggesting that Dr. von Luhrte knew a failure to respond would pose a serious risk to Mr. Helphenstine *and* ignored that risk. Dr. von Luhrte, recommended that Mr. Helphenstine be transported to the emergency room for treatment for possible dehydration. Mr. Helphenstine refused. Dr. von Luhrte then prescribed anti-nausea medications and fluids. Dr. von Luhrte did not ignore the risk: he put in place a plan to combat the risk.

## **CONCLUSION**

Appellants cannot prevail on their 42 U.S.C. §1983 claim against Dr. von Luhrte regarding an alleged violation of Mr. Helphenstine's Eighth and Fourteenth Amendment rights. Therefore, the District Court did not err in granting summary judgment as to the §1983 claims. Accordingly, Dr. von Luhrte respectfully requests that this Court uphold the ruling of the District Court to dismiss Appellant's §1983 claims against him.

Respectfully submitted,

Clayton L. Robinson, Esq.
Courtney L. Soltis, Esq.
ROBINSON & HAVENS, PSC
101 Prosperous Place, Suite 100
Lexington, KY 40509
Ph: (859) 559-4533
Fx: (859) 264-0444

/s/*Courtney L. Soltis, Esq.*
CLAYTON L. ROBINSON, ESQ. (85084)
COURTNEY L. SOLTIS, ESQ. (#97078)
**COUNSEL FOR APPELLEE TOMMY von LUHRTE, D.O.**

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(A)

Pursuant to FRAP 32(g)(1), I hereby certify that this brief complies with the page limitation set forth in FRAP 32(a)(7)(A).

/s/*Courtney L. Soltis, Esq.*
Counsel for Appellee, **TOMMY von LUHRTE, D.O.**

## CERTIFICATE OF SERVICE

A copy of this Appellee's Brief was served via email on July 29, 2022, on all counsel of record.

/s/*Courtney L. Soltis, Esq.*
Counsel for Appellee, **TOMMY von LUHRTE, D.O.**

## APPENDIX

| Record Entry | Description of Document | Page ID No. |
|---|---|---|
| | | |
| 1 | Plaintiffs' Complaint | 1-8 |
| 94-4 | Facility Master Log Report | 750 |
| 96-21 | Death Certificate | 840 |
| 98 | McGinnis Deposition | 846-878 |
| 99 | Lucas Deposition | 879-898 |
| 100 | Ruark Deposition | 899-929 |

| 101 | Carver Deposition | 930-955 |
|---|---|---|
| 102 | Von Luhrte Deposition | 956-1013 |
| 103 | Lykins Deposition | 1014-1059 |
| 104 | Thoroughman Deposition | 1060-1086 |
| 107 | Riley Deposition | 1121-1136 |
| 108 | Bloomfield Deposition | 1137-1187 |
| 119 | Frame Deposition | 1422-1507 |
| 121 | Potter Deposition | 1584-1697 |
| 124-5 | Riley Incident Report | 1744 |
| 124-6 | McGinnis Medical Request Form | 1745 |
| 124-11 | Monroe Medical Request Form | 1755 |
| 124-12 | Von Luhrte Orders | 1756 |
| 124-13 | Medication Administration Record | 1757 |
| 124-15 | Observation Logs | 1759-1761 |